**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEDRICK POLK, #2376179** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:21cv998** |
| | § | |
| **NURSE MARGIE, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Defendants Tom Watt, Sheriff of Grayson County ("Sheriff Watt"), and Margie McCauley's ("Nurse Margie") Motion to Dismiss (Dkt. #17) and Defendant Cynthia Armstrong's ("Nurse Armstrong")[1] (together with Sheriff Watt and Nurse Margie, "Defendants") Motion to Dismiss (Dkt. #18) (together with Sheriff Watt and Nurse Margie's Motion to Dismiss, "the Motions to Dismiss"). To date, Plaintiff Dedrick Polk ("Plaintiff") has not filed a response. For the reasons that follow, the Court recommends the Motions to Dismiss (Dkt. ##17, 18) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

**I.   BACKGROUND**

On December 11, 2021, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against Defendants. (Dkt. #1). At all times relevant to his claims, Plaintiff was a pretrial detainee at the Grayson County Jail. During his tenure at the Grayson County Jail, Plaintiff alleges

---

[1] Plaintiff incorrectly named Nurse Armstrong in the Complaint as "TCC Provider." (Dkt. #1, p. 3). Nurse Armstrong is employed by the Texoma Community Center ("TCC"). The TCC provides certain mental health prescriber services to the Grayson County Jail under contract, and Nurse Armstrong is one of the TCC's employees who provides services to the jail. (Dkt. #18, p. 1, n.1; Dkt. #18-1). Nurse Armstrong surmises that in naming "TCC Provider" as a defendant, Plaintiff was "parroting the reference to 'TCC Provider' contained in one of the Grayson County Sheriff's Office Inmate Grievance Review forms attached to the Complaint." (Dkt. #18, p. 3). Nurse Armstrong explains, "'TCC Provider' is a colloquial expression the Sheriff's Department apparently uses to reference the mental health nurse practitioner (Armstrong) assigned by the [TCC] to provide mental health medication prescribing services to inmates at the Grayson County jail." (Dkt. #18, p. 3). The docket has been changed to reflect the name of the correct defendant, Cynthia Armstrong, a mental health nurse practitioner employed by the TCC. The Court will refer to Nurse Armstrong instead of "TCC Provider" throughout this Report and Recommendation.

Nurse Margie confused him with another inmate and gave him the wrong medication, which resulted in a seizure and possible stroke. (Dkt. #1, pp. 3, 6). Plaintiff alleges Nurse Margie admitted her mistake in writing. (Dkt. #1, p. 6). Plaintiff also alleges Nurse Armstrong, a mental health nurse practitioner employed by the TCC, allowed three separate incidences of improper medication administration at the Grayson County Jail and "refused to have [Plaintiff] re-evaluated by mental health or medical doctor upon [his] current incarceration." (Dkt. #1, pp. 3, 4). As the basis for Plaintiff's claims against Sheriff Watt, Plaintiff avers Sheriff Watt "is responsible for any and all actions of those employed by Grayson County Sheriff's Office" and "allowed medical malpractice and negligence by his medical staff and deputies" and "allowed excessive force by deputies." (Dkt. #1, pp. 3, 5). Plaintiff alleges, "[i]nstead of proper medical attention, [he] was assaulted by deputies and placed in a cell [on] suicide watch after being abused."[2] (Dkt. #1, p. 5). He alleges his PTSD has been exacerbated because he is "fearful to even take medications or ask for help causing retaliation and more physical and mental harm." (Dkt. #1, p. 5). Plaintiff requests the following relief: "Investigation into TCC Provider, compensation for pain and suffering, [admittance] of gross negligence." (Dkt. #1, p. 6).

Attached to Plaintiff's Complaint are inmate grievance forms and Inmate Grievance Review decisions concerning Plaintiff's complaints about receiving another inmate's medication, receiving blood pressure medication before his blood pressure was checked, and not receiving a mental health assessment upon his current admittance into Grayson County Jail. (Dkt. #1-1).

On September 16, 2022, Sheriff Watt and Nurse Margie filed their Motion to Dismiss. (Dkt. #17). They move to dismiss Plaintiff's suit under Rule 12(b)(6). They urge dismissal on

---

[2] Plaintiff provides no additional details about the alleged assault, including when the assault occurred and which Sheriff deputies were involved. None of Plaintiff's grievances attached to the Complaint concerns use of excessive force, and the Complaint does not allege any named Defendant was personally involved in any alleged assault or use of excessive force.

numerous grounds, including failure to plead an official capacity claim, insufficiency of the pleadings for Sheriff Watt's lack of personal involvement or supervisory liability, failure to state a claim, and qualified immunity. (Dkt. #17, pp. 7-33). Nurse Armstrong also filed her Motion to Dismiss on September 16, 2022. (Dkt. #18). She urges dismissal under Rule 12(b)(6) because: she is a non-custodial official; Plaintiff failed to state a claim for deliberate indifference; and she is entitled to qualified immunity. (Dkt. #18, pp. 4-14). To date, Plaintiff has not filed a response.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

---

[3] Almost nine months have elapsed since the Motions to Dismiss (Dkt. ##17, 18) were filed, and Plaintiff has not filed responsive briefing. A failure to respond to a motion to dismiss creates the presumption that Plaintiff has no facts to controvert the motion. *See* Local Rule CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### III. ANALYSIS

#### A. <u>No Longer Confined at Grayson County Jail—Declaratory or Injunctive Relief</u>

Because Plaintiff is no longer a detainee at the Grayson County Jail, his requests for an investigation into Nurse Armstrong and for an admission of gross negligence by Defendants (Dkt. #1, p. 6) are moot. The Fifth Circuit and district courts in Texas have repeatedly held transfer out of the facility complained of moots any claim for declaratory or injunctive relief related to jail-specific remedies. *See, e.g., Kennemer v. Parker Cnty.*, No. 4:20-cv-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [the plaintiff] is no longer housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No.

21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Lee v. Valdez*, No. CIV.A.3:07-cv-1298-D, 2009 WL 1406244, at *14 (N.D. Tex. May 20, 2009) (collecting cases) ("Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for injunctive and/or declaratory relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury.").

## B.  Official Capacity Claims—Sheriff Watt and Nurse Margie

Sheriff Watt and Nurse Margie urge dismissal of any official capacity claim because Plaintiff's Complaint does not contain any factual allegation that would support a Section 1983 claim against Grayson County.[4] (Dkt. #17, pp. 19-21).

To the extent Plaintiff seeks to recover against Sheriff Watt and Nurse Margie in their official capacities, Plaintiff's claims are subject to dismissal. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, any Section 1983 action against Sheriff Watt and Nurse Margie in their official capacities is, in effect, a claim against Grayson County. *See Bone v. Watt*, No. 4:21-cv-201, 2022 WL 912100, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's § 1983 action against Sheriff [Skinner] in [his] official capacity is, in effect, a claim against [Collin] County.") (citations omitted) (alterations in original), *report and recommendation adopted*, No. 4:21-cv-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022). A judgment against a public servant in his or her official capacity imposes liability on the entity that he or she represents, *see Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 623 (W.D. La. 2013); thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an

---

[4] Plaintiff does not specify whether he is suing Sheriff Watt and Nurse Margie in their individual or official capacities.

entity of which [the official] is an agent." *Monell*, 436 U.S. at 690 n.55; *see also Gage v. Valdez*, No. 3:16-cv-1360-B-BH, 2017 WL 4465765, at *3 (N.D. Tex. Aug. 21, 2017) ("Plaintiff's suit against the Sheriff in her official capacity is merely another way of pleading an action against her municipal employer, i.e., Dallas County."), *report and recommendation adopted*, No. 3:16-cv-1360-B-BH, 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017); *Sutherland v. Akin*, No. 4:19-cv-216-O, 2021 WL 462103, at *8 (N.D. Tex. Feb. 9, 2021) ("[The plaintiff's] claims against the defendants [including a sheriff and county jail officers, among others,] in their official capacities as employees of the Wise or Tarrant County Jails are construed as claims against Wise County and Tarrant County.").

Under *Monell*, "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)); *see also Doe v. Harris Cnty.*, No. 21-20251, 2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James*, 577 F.3d at 617 (quoting

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

An "official policy" under *Monell* can take different forms: it can be either an official written policy or a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Gomez*, 18 F.4th at 777 (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). A plaintiff who does not allege an official written policy faces a high bar to prove an official custom:

> Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body that the objectionable conduct is the expected, accepted practice of city employees. *It is thus clear that a plaintiff must demonstrate a pattern of abuses* that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. *A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances*.

*Peña Arita*, 470 F. Supp. 3d at 706 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)) (emphasis added). "[I]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). This is true even at the pleading stage. *See, e.g.*, *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020) ("[A] plausible [municipal liability] claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-cv-45, 2020 WL 7056336, at *9 (N.D. Tex. Dec. 2, 2020) (finding the plaintiff "failed to allege facts sufficient to permit the court to infer the existence of an official custom" because she "has not alleged, other than in conclusory terms, another instance" of a violation similar to that which she experienced).

Review of the Complaint shows that Plaintiff fails to identify any policy or practice of Grayson County related to his specific allegations or to the policies at the Grayson County Jail generally. Plaintiff has thus failed to allege there was an official policy or custom promulgated by Grayson County that was the moving force behind the alleged violations of the Constitution, and thus any official capacity claim should be dismissed. *See Bone*, 2022 WL 912100, at *8 (noting there is a "wholesale absence of any allegations against the County concerning its policies, practices or customs regarding providing medical care to pretrial detainees"); *Melton v. Hunt Cnty.*, No. 3:14-cv-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct. 8, 2019) ("[The plaintiff's] pleading consists of only conclusory allegations. [The plaintiff] does not establish that Hunt County's failure to train was the 'moving force' behind the constitutional violation nor does [the plaintiff] allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference."); *see also Jenkins v. LaSalle Sw. Corr.*, No. 3:17-cv-1376-M-BN, 2020 WL 2106355, at *3 (N.D. Tex. Jan. 28, 2020) ("[B]ecause Plaintiff fails to allege that his rights were violated under an official policy of either LaSalle or Johnson County, he has not alleged a plausible claim against the defendants or their policymakers."), *report and recommendation adopted*, No. 3:17-cv-1376-M, 2020 WL 2105842 (N.D. Tex. Apr. 30, 2020); *Stiff v. Stinson*, No. 3:12-cv-4998-D, 2013 WL 3242468, at *4 (N.D. Tex. June 27, 2013) (finding the plaintiff's "official capacity claims against the Sheriff and the Officer should be dismissed" where the plaintiff failed to allege an official policy or custom of the county).

## C.  Individual Capacity Claims—All Defendants

Defendants argue Plaintiff has failed to state a claim for relief under Rule 12(b)(6) and, in any event, Plaintiff is barred from recovery under the doctrine of qualified immunity.

Qualified immunity is a defense available to government officials in their individual capacities. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). If the defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to plead specific facts to show that qualified immunity does not apply. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). To defeat qualified immunity, the plaintiff must allege facts showing both of the following: (1) the defendant violated the plaintiff's constitutional rights; and (2) the right was clearly established at the time of the alleged conduct. *Terwilliger*, 4 F.4th at 284; *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (citing *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017)). A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Terwilliger*, 4 F.4th at 284 (quoting *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004)). If the right was clearly established, the Court must decide whether the defendant's actions were objectively reasonable in light of the clearly established law. *See Gates*, 537 F.3d at 419. In this case, Plaintiff failed to plead facts showing Defendants violated Plaintiff's constitutional rights. As such, the Court does not reach whether the rights allegedly violated were clearly established under the law. *See Johnson v. Johnson*, 385 F.3d 503, 525 (5th Cir. 2004) (as the Fifth Circuit has explained, a "defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all.").

### 1.  Claims for Inadequate Medical Care—Nurse Margie and Nurse Armstrong

Pretrial detainees, like Plaintiff, have constitutional rights that flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). "Since the

State *does* punish convicted prisoners, but *cannot* punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *accord Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021). The Fourteenth Amendment imposes a duty on states to provide pretrial detainees with "basic human needs, including medical care and protection from harm." *Martinez*, 846 F. App'x at 241-42 (quoting *Hare*, 74 F.3d at 650).

To plead a constitutional violation in the context of medical care, the plaintiff must allege facts showing a prison official acted with deliberate indifference to a prisoner's serious medical need.[5] *Id.* at 243; *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001); *Hare*, 74 F.3d at 647-48. "Deliberate indifference is a demanding standard" requiring that the official "both know the pretrial detainee faces 'a substantial risk of serious harm' and disregards 'that risk by failing to take reasonable measures to abate it.'" *Martinez*, 846 F. App'x at 243 (quoting *Farmer v. Brennen*, 511 U.S. 825, 847 (1994)). The plaintiff meets his burden if he can show the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 729 (5th Cir. 2020) (quoting *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019)); *accord Rogers v. Hierholzer*, 857 F. App'x 831, 833 (5th Cir. 2021); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a

---

[5] The deliberate indifference analysis under the Eighth and Fourteenth Amendments are the same. *Martinez*, 846 F. App'x at 243 n.2. Therefore, cases discussing deliberate indifference in the Eighth Amendment context are applicable in this analysis. *Id.* (citing *Hare*, 74 F.3d at 647 ("[N]o constitutionally relevant difference exists between the rights of pretrial detainees and convicted prisoners to be secure in their basic needs. Since the Supreme Court has consistently adhered to a deliberate indifference standard in measuring convicted prisoners' Eighth Amendment rights to medical care and protection from harm, we adopt a deliberate indifference standard in measuring the corresponding set of due process rights of pretrial detainees.")).

prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Deliberate indifference is an extremely high standard to meet," requiring "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice." *Bone*, 2022 WL 912100, at *5 (quoting *Rogers*, 857 F. App'x at 833).

       *a. Nurse Margie*

Plaintiff alleges Nurse Margie confused him with another inmate and gave him the wrong medication, which resulted in a seizure and possible stroke. (Dkt. #1, pp. 3, 6). Sheriff Watt and Nurse Margie "do not deny there was a mix-up with medication" and "Nurse [Margie] accidentally gave Plaintiff the mediation cup meant for another inmate." (Dkt. #17, p. 30, ¶ 66). Once Nurse Margie realized her mistake, she immediately considered the medications Plaintiff had been given and the medications that should have been but were not given and gave Plaintiff the medication that he was not initially given and monitored the situation. Nurse Margie generated an incident report at the time of the event. (Dkt. #17-4). The report provides:

> At 0600 med pass today 11/16/2021, I confused Mr. Polk with Mr. G. Bailey. Mr. Polk excepted [sic] the meds without question then came back wanting to know where the rest of his meds were. Upon further questioning I realized it was the wrong I/M. He took Fluoxetine 20mg & Risperidone 3 mg. He did take his correct [medication] after a short time of discussion, except the fluoxetine 10 mg. Amlodipine 10mg, HCTZ 12.5mg, Cloindine 0.1mg, Hydroxyzine 50mg, (Fluoxetine 10mg not given.)

(Dkt. #17-4). Plaintiff promptly filed a grievance regarding the medication mix-up. (Dkt. #1-1, p. 2) The grievance was answered as follows:

> PER MEDICAL: Medical Margie [Nurse Margie] confused Mr. Polk with Mr. Bailey. Mr. Polk accepted the meds without question, then came back wanting to know where the rest of his meds were. Upon further questioning, Medical Margie realized it was the wrong inmate. He took Fluoxetine 20mg and Risperidone 3 mg. He did take his correct [medication] after a short time of discussion, except the fluoxetine 10 mg, HCTZ 12.5mg, Cloindine 0.1mg, Hydroxyzine 50mg, (Fluoxetine 10mg not given.)

(Dkt. #1-1, p. 1). The grievance was not sustained. (Dkt. #1-1, p. 1).

The grievance form does not indicate Plaintiff experienced a seizure or stroke after taking another inmate's medications; rather, the grievance notes only Plaintiff was feeling dizzy. (Dkt. #1-1, p. 2). There is nothing in the jail records indicating Plaintiff suffered any other adverse reaction as a result of the mix-up in medications. Indeed, all but one of the medications Plaintiff was given were identical to medication Plaintiff was prescribed. The medication not given initially was given shortly thereafter. Nurse Margie's mistake was promptly discovered, addressed, and documented.

Plaintiff argues Nurse Margie's conduct in confusing him with another inmate when dispensing medications amounted to "gross negligence." (Dkt. #1, p. 6). Thus, Plaintiff's own words and exhibits reflect Nurse Margie mistakenly or negligently gave Plaintiff another inmate's medications. Plaintiff has not alleged or offered anything to show he was given another inmate's medications as a result of deliberate indifference to his serious medical needs, as opposed to a simple mistake or negligence by Nurse Margie. *See Callaway v. Smith Cnty.*, 991 F. Supp. 801, 809 (E.D. Tex. 1998) ("[The plaintiff] has offered nothing to show that he was given the wrong dosage of Crixivan as a result of deliberate indifference to his serious medical needs, as opposed to a simple mistake or to negligence by the medical staff at the jail."); *Huff v. Collier*, No. 6:20-cv-9, 2022 WL 17365284, at *4 (E.D. Tex. Sept. 12, 2022) ("[A]ny claim that Defendants made 'mistakes' in his medication dosage, fails to state a claim because it is well-settled that the failure to diagnose—or even an incorrect diagnosis—does not constitute deliberate indifference."), *report and recommendation adopted*, No. 6:20-cv-9, 2022 WL 17363022 (E.D. Tex. Dec. 1, 2022); *Rowe v. Bowie Cnty. Corr. Ctr.*, No. 5:13-cv-78, 2013 WL 5737369, at *4 (E.D. Tex. Oct. 22, 2013) ("Although [the plaintiff] complains that he did not receive the pain medication which was

prescribed for him, he has offered nothing to show that this was the result of deliberate indifference rather than a mistake or negligence."). Furthermore, Plaintiff's own exhibits show once Nurse Margie realized her mistake, she promptly took steps to ensure Plaintiff received the correct medications, monitored the situation, and reported the mistake. These facts do not demonstrate Nurse Margie refused to treat Plaintiff, ignored his complaints, or intentionally gave him another inmate's medication, nor do the facts demonstrate Nurse Margie's conduct "evince[d] a wanton disregard" for Plaintiff's "serious medical needs." *Cadena*, 946 F.3d at 729. The allegations in the record wholly fail to rise to the level of showing deliberate indifference in violation of Plaintiff's constitutional rights.

In sum, Plaintiff has not pled facts to state a claim for relief plausible on its face. The facts pled as to Nurse Margie do not permit the Court to infer more than medical negligence. Plaintiff's medical negligence claim against Nurse Margie fails to state a claim upon which relief may be granted. As such, Plaintiff has failed to plead a constitutional violation sufficient to support a deliberate indifference claim under the Fourteenth Amendment. Because there is no alleged violation of a constitutional right by Nurse Margie, the Court finds Nurse Margie is entitled to qualified immunity in the alternative. Based on the foregoing, the Court recommends dismissing Plaintiff's claim against Nurse Margie with prejudice.

   *b.  Nurse Armstrong*

Liberally construed, Plaintiff's Complaint alleges Nurse Armstrong violated his Fourteenth Amendment rights by: (1) depriving him of medical care—specifically, refusing to reevaluate his mental health upon his current confinement at the Grayson County Jail; and (2) failing to protect Plaintiff from harm—specifically, by allowing three separate instances of improper medication administration. (Dkt. #1, pp. 3, 4).

13

Plaintiff was previously confined in the Grayson County Jail in April 2021. (Dkt. #18-2, pp. 12-13). At that time, Plaintiff's mental health was evaluated, and Plaintiff was prescribed certain medications. (Dkt. #18-2, pp. 7, 12-13). Plaintiff was subsequently released in May 2021, but was arrested and again confined in the Grayson County Jail in November 2021—the confinement at issue in this case. (Dkt. #18-2, p. 7). When he was booked in the Grayson County Jail in November 2021, Nurse Armstrong, a mental health nurse practitioner employed by the TCC, conducted an extensive mental health evaluation of Plaintiff. (Dkt. #18-2, pp. 5-22). Nurse Armstrong determined Plaintiff should continue to take the medications he had been prescribed in April 2021, when he was last confined in the Grayson County Jail; Plaintiff had stopped taking the medications after his release in May 2021. (Dkt. #18-2, pp. 7, 13-14). Plaintiff reported to Grayson County Jail staff that when he took his medications, they worked. (Dkt. #18-2, p. 7). Nurse Armstrong observed Plaintiff's "[o]verall mood off of all his medications [was] not good," rating "10/10" for depression, anxiety, and anger/irritation. (Dkt. #18-2, p. 7).

Plaintiff filed a grievance, stating he was given certain medications just because "they looked on a computer screen and [saw] that's what [he] was given [the] last time" he was at the Grayson County Jail. (Dkt. #1-1, p. 4). The grievance was answered as follows: "You saw the TCC Provider and she is the one that prescribed you the medication that you are currently on. It is your responsibility to take the medications prescribed." (Dkt. #1-1, p. 3).

Plaintiff's allegation Nurse Armstrong denied adequate medical care to Plaintiff is conclusory and lacks any factual basis. To the contrary, Nurse Armstrong conducted an extensive mental health evaluation—which included Plaintiff's self-report that his prior medications worked well when he took them—and determined the best course of treatment for Plaintiff was to continue taking the medications prescribed during his previous confinement at the Grayson County Jail. At

best, Plaintiff's allegations amount to nothing more than a disagreement in medical treatment, which does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346. As such, Plaintiff has failed to plead a constitutional violation sufficient to support a deliberate indifference claim under the Fourteenth Amendment. Because there is no alleged violation of a constitutional right by Nurse Armstrong, the Court finds Nurse Armstrong is entitled to qualified immunity in the alternative. Based on the foregoing, Plaintiff's claim against Nurse Armstrong for deliberate indifference to his serious medical needs should be dismissed with prejudice.

### 2. Claim for Failure to Protect—Nurse Armstrong

Plaintiff's Complaint, liberally construed, also alleges Nurse Armstrong violated his Fourteenth Amendment rights by failing to protect Plaintiff from harm—specifically, by allowing three separate instances of improper medication distribution. (Dkt. #1, pp. 3, 4). Plaintiff does not provide any further information about the three instances of improper medication distribution. Based on the grievances attached to Plaintiff's Complaint, however, the Court assumes Plaintiff's failure to protect claim is based on instances when jail medical staff allegedly gave Plaintiff blood pressure medication before checking his blood pressure and when Nurse Margie confused Plaintiff with another inmate and gave him the wrong medications. (*See* Dkt. #1-1).

Generally, to maintain a failure to protect claim, Plaintiff must show he "was confined under conditions posing a substantial risk of serious harm and that *prison officials* were deliberately indifferent to his need for protection." *Arebalo v. Swisher Cnty., Tex.*, No. 2:13-cv-082-J, 2013 WL 4475606, at *3 (N.D. Tex. Aug. 21, 2013) (citing *Hare*, 74 F.3d at 639, 643) (emphasis added). Nurse Armstrong—as an employee of the TCC—was not a custodial prison official or an employee of Grayson County, and she did not determine or control Plaintiff's custody or conditions of confinement. *See id.* Plaintiff does not allege to the contrary. Further, Plaintiff has

not explained how Nurse Armstrong had a duty to protect Plaintiff from alleged improper medication administration by Grayson County Jail medical staff while he was detained in a jail she did not control.

Even assuming Nurse Armstrong was a jail official, Plaintiff does not allege Nurse Armstrong knew about any improper medication administration and then was deliberately indifferent to the need to protect Plaintiff from any substantial risk of serious harm caused by taking the improper medication. Nurse Armstrong's alleged denial to Plaintiff of reasonable protection from improper medication administration fails to state a claim upon which relief may be granted. Plaintiff has not established—as he must—Nurse Armstrong violated a statutory or constitutional right. For these additional reasons, Nurse Armstrong is entitled to qualified immunity in this lawsuit. Accordingly, Plaintiff's claim against Nurse Armstrong for failure to protect should be dismissed with prejudice.

### 3.  No Personal Involvement/No Supervisory Liability—Sheriff Watt

Plaintiff alleges Sheriff Watt "is responsible for any and all actions of those employed by Grayson County Sheriff's Office" and "allowed medical malpractice and negligence by his medical staff and deputies" and "allowed excessive force by deputies." (Dkt. #1, pp. 3, 5).

General allegations Sheriff Watt is responsible for the Grayson County Jail are not enough to establish supervisory liability. *See Hennington v. Lumpkin*, No. 6:20-cv-593, 2021 WL 5710105, at *6 (E.D. Tex. Nov. 1, 2021) ("Plaintiff also states that Warden Stiefer was legally responsible for the Beto Unit and all the inmates in the prison and failed to protect them from COVID-19. These allegations fail to include facts regarding Warden Stiefer's personal misconduct and they do not include facts demonstrating that Warden Stiefer implemented an unconstitutional policy") (citation omitted), *report and recommendation adopted*, No. 6:20-cv-593, 2021 WL

5630621 (E.D. Tex. Dec. 1, 2021). To establish liability under Section 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)). Sheriff Watt urges he had no personal involvement in the events that are the basis of Plaintiff's claims. Indeed, review of the Complaint reveals no mention of any act or omission committed personally by Sheriff Watt related to any claim, be it medical indifference, excessive force, or any other condition of the Grayson County Jail. *See Toliver v. Braddy*, No. 4:20-cv-132, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-cv-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021); *Diggs v. Waybourn*, No. 4:20-cv-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing Section 1983 claims against a sheriff and officers for "lack of sufficient personal involvement"). Absent personal involvement or any fact that would give rise to supervisory liability, Plaintiff fails to state a claim upon which relief can be granted.

To the extent Plaintiff is suing Sheriff Watt based on his supervisory role, Sheriff Watt cannot be held vicariously responsible for the acts of employees on any theory of vicarious liability or *respondeat superior*. *See Rosas v. Bexar Cnty.*, No. SA-14-CA-1082-DAE, 2015 WL 1966130, at *9 (W.D. Tex. Jan. 31, 2015) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."), *report and recommendation adopted*, No. 5:14-cv-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015). Under Fifth Circuit jurisprudence, a supervisory official may only be held liable if one of the following exists: (1) personal involvement in the constitutional deprivation, or (2) sufficient causal

connection between the supervisor's wrongful conduct and the constitutional violations. *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018); *Mesa*, 543 F.3d at 274; *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). "These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting." *O'Shea v. Parkey*, No. 4:12-cv-265, 2014 WL 494905, at *3 (E.D. Tex. Feb. 4, 2014) (citing *Iqbal*, 556 U.S. at 677). Thus, a supervisor may be held liable if he is not personally involved "only if the supervisory official implements a policy 'so deficient that the policy [] itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Carter v. Livingston*, No. 9:17-cv-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins*, 828 F.2d at 304), *report and recommendation adopted*, No. 9:17-cv-40, 2021 WL 825490 (E.D. Tex. Mar. 3, 2021).

Plaintiff's allegations do not establish Sheriff Watt implemented a policy or practice that was a moving force of any violation of Plaintiff's constitutional rights. Specifically, Plaintiff does not identify any specific policy, which as a moving force, contributed to the alleged deliberate indifference to Plaintiff's serious medical needs at the Grayson County Jail or the alleged use of excessive force by Grayson County Sheriff's Office deputies. Nor does Plaintiff reference any evidence indicating there is a Grayson County policy, practice, or custom that resulted in the deprivation of Plaintiff's constitutional rights. To the contrary, internal Grayson County Sheriff's Office written policy directs Sheriff's Office staff to properly provide for and protect the constitutional rights of inmates. (Dkt. #17-1). The policy states the Sheriff's Office staff "shall protect, to the extent possible, any person being taken into custody from physical injury" and "shall use only such force as is necessary in effecting an arrest and/or maintaining custody of prisoners." (Dkt. #17-1, p. 4). The policy provides Sheriff's Office deputies and detention officers "shall use

18

force in accordance with applicable laws and GCSO policy and procedures" and "shall, at all times take appropriate action to protect life and property, preserve the peace, prevent crime, aid persons and other members." (Dkt. #17-1, pp. 5-6). Additionally, Sheriff Watt has, through written policy, provided for the Grayson County Health Department and the TCC to provide independent judgment and medical care for the inmates in the jail. (Dkt. ##17-2, 17-3). Undeniably, and as discussed above, Plaintiff's own exhibits show medical staff were assessing Plaintiff and responding to his medical conditions. Thus, Plaintiff's Complaint fails to plead Sheriff Watt's personal involvement in any alleged constitutional violation or any fact giving rise to supervisory liability. On this basis alone, Plaintiff's claims against Sheriff Watt are subject to dismissal. *See Ewing v. Grayson Cnty., Texas*, No. 4:21-cv-00386, 2022 WL 4459929, at *4 (E.D. Tex. Aug. 19, 2022), *report and recommendation adopted*, No. 4:21-cv-386, 2022 WL 4449314 (E.D. Tex. Sept. 23, 2022).

Furthermore, because Plaintiff has failed to state a claim against any individual defendant for deliberate indifference, Plaintiff has failed to state the causation element of a Section 1983 claim against Sheriff Watt for any type of claim for a failure to supervise. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("It is facially evident that [the test for supervisory liability] test cannot be met if there is no underlying constitutional violation."). Plaintiff has established no such claim, and none would be proper. As Plaintiff has failed to allege facts amounting to a constitutional violation, Sheriff Watt is entitled to qualified immunity in the alternative.

### D.  **Leave to Amend**

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule

15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

Here, Plaintiff has provided no indication he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his Complaint. Moreover, when the plaintiff makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper when the plaintiff's allegations fail to state a claim for which relief can be granted. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). Under these circumstances, the Court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Defendants, who have already filed motions to dismiss and would likely file second motions to dismiss if an amended complaint were filed.

**E.  Strike under 28 U.S.C. § 1915(g)**

Under the Prison Litigation Reform Act ("PLRA"), an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case for failure to state a claim upon which relief may be granted, it is further recommended that Plaintiff be

advised that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates that he is in imminent danger of serious physical injury.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends the Motions to Dismiss (Dkt. ##17, 18) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 2nd day of August, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE